Susan **GALLAGHER**, et al., Plaintiffs,

v.

**PARK WEST BANK AND TRUST CO.**, Defendant.

**PARK WEST BANK AND TRUST CO.**, Third–Party Plaintiff,

v.

Carol A. **GALLAGHER**, Third–Party Defendant.

Carol A. **GALLAGHER**, Counter–Claimant,

v.

**PARK WEST BANK AND TRUST CO.**, Counter–Defendant.

No. Civ.A. 94–30239–MAP.

United States District Court, D. Massachusetts.

May 20, 1998.

13. Plaintiffs motion to enforce the preliminary injunction [docket entry # 96] is **MOOTED** by Section IV.

Kevin J. Loftus, East Longmeadow, MA, for plaintiffs.

Samuel A. Marsella, Doherty, Wallace, Pillsbury & Murphy, Springfield, MA, for Park West Bank and Trust Company.

Lawrence R. Ehrhard, Springfield, MA, for Carol A. Gallagher.

## *MEMORANDUM*

PONSOR, District Judge.

### *I. INTRODUCTION*

On July 29, 1993 the nine children of Edward R. Gallagher, Sr. brought suit in state court against Park West Bank and Trust Company ("Park West"), claiming that Park West improperly distributed to their stepmother the entire proceeds of a trust established by their father in 1971.

Park West denied any wrongful distribution, but on September 13, 1994 filed a third-party action against the plaintiffs' stepmother, Carol A. Gallagher, seeking recoupment and indemnification from her for any monies she incorrectly received from the bank. On October 20, 1994 Carol Gallagher removed the case to federal court, invoking jurisdiction under 28 U.S.C. § 1331 and citing the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* She also filed a counterclaim against Park West, asserting that the bank's negligent failure to effect changes in the trust documentation, as intended by her husband Edward R. Gallagher, Sr., constituted a viola-

tion of Park West's fiduciary duty under ERISA.

On August 18, 1995, plaintiffs filed a Motion for Summary Judgment, arguing that as a matter of law the terms of the 1971 trust required Park West to pay them 50% of the trust proceeds. This motion was referred to Magistrate Judge Kenneth P. Neiman for Report and Recommendation. On January 5, 1996, Magistrate Judge Neiman recommended that the Motion for Summary Judgment be allowed in part, finding that the plaintiffs were entitled to 25%, but not half of the trust proceeds, and that Carol Gallagher was entitled to the remaining three-fourths.

On March 27, 1996 this court, over the objections of both sides, adopted the Report and Recommendation, holding that the terms of the trust agreement, when viewed through the lens of ERISA and the Retirement Equity Act of 1984 ("REA"), 29 U.S.C. §§ 1052–1056, which amended ERISA, entitled the plaintiffs to 25% of the trust proceeds as a matter of law.

Plaintiffs thereafter moved for attorneys' fees, prejudgment interest and entry of final judgment. On January 10, 1997 the court issued a Memorandum allowing the Motion for Attorneys' Fees in the amount of $22,-342.50 and prejudgment interest from November 30, 1991 at 12%. This interest rate should be calculated upon the amount of $42,537.00, which all counsel agree constitutes the one-fourth share of the trust proceeds to which the plaintiffs are now entitled.

The court's Memorandum of January 10, 1997 also denied the plaintiffs' Motion for Entry of Judgment pursuant to Fed.R.Civ.P. 54(b), on the ground that the third-party action between Park West and Carol Gallagher remained to be resolved and that entry of partial judgment would create a risk of multiple appeals. *See State Street Bank & Trust Co. v. Brockrim, Inc.*, 87 F.3d 1487 (1st Cir.1996).

On February 2, 1998 the court commenced a non-jury trial on the defendant Park West's third-party action against Carol Gallagher for recoupment and on Carol Gallagher's counterclaim against Park West for violation of ERISA. On February 11, 1998 the court made oral findings of fact and conclusions of law in favor of Carol Gallagher on Park West's claim for recoupment. The reasons for this holding were set forth in detail orally, but will be summarized below.

Following the court's February 11 decision, the only issue remaining in the case is the counterclaim of Carol Gallagher against Park West asserting a violation of ERISA. If the counter-claimant is successful on this claim, she will be entitled not only to judgment on Park West's third-party recoupment claim, but will be entitled to reasonable attorneys' fees under ERISA. The court requested supplemental submissions from counsel on this remaining issue. Having now received these submissions, the court will enter judgment for Carol Gallagher on her counterclaim for the reasons set forth below.

## II. DISCUSSION

This portion of the Memorandum will offer, first, a summary of the court's reasons, previously stated orally, supporting judgment in favor of third-party defendant Carol A. Gallagher on Park West's third-party claim. Next, the Memorandum will address Carol Gallagher's counterclaim against Park West for the ERISA violation.

### A. *Park West's Claim for Recoupment and Indemnification*

■ The court finds that the following facts support entry of judgment in favor of Carol Gallagher on Park West's third-party claim against her for recoupment and indemnification.

In 1971 Edward R. Gallagher, Sr. created a trust with the defendant Park West as trustee. In 1978 Gallagher created a pension benefit plan, naming as the beneficiary of that plan the defendant Park West in its role as trustee of the 1971 trust.

The documentation embodying the 1978 pension benefit plan was created and drafted by Park West in-house. By the early 1980s it was clear to the bank that the law governing pensions was increasing in complexity and the trust instruments were in need of a careful overhaul. Of particular concern were

the requirements of pension benefit plans for qualification under ERISA.

In order to insure that its pension benefit plans complied with the law, Park West retained a private consulting firm known as McKay/Hochman to create a new pension plan to replace Park West's in-house documents. The new plan documentation was intended to qualify under ERISA and be used by Park West clients. McKay/Hochman duly prepared the new documents and a summary of the revised plan was sent to all Park West clients, including Edward R. Gallagher, Sr. Thereafter, no one at Park West ever troubled to send Park West's clients, including Edward R. Gallagher, Sr., any adoption form permitting Gallagher to make written confirmation that he had adopted the McKay/Hochman plan.

Despite this, a clear preponderance of the evidence supports the conclusion that Edward R. Gallagher, Sr. intended to adopt the McKay/Hochman pension plan and, indeed, that both Park West and he assumed he had done so, despite the lack of documentation.

The facts supporting this conclusion are as follows. First, the 1978 pension benefit plan would not have qualified under ERISA, and Gallagher would have jeopardized the tax benefits he was seeking unless he adopted the McKay/Hochman replacement. Second, Gallagher signed a minor amendment to the McKay/Hochman plan which was circulated to him by Park West. Third, none of the bank's customers made an affirmative decision to remain under the bank's outmoded 1978 plan. Fourth, in its relationship to the IRS, Park West *itself* took the position that Gallagher had signed the adoption papers confirming his coverage under the McKay/Hochman plan. Fifth, Carol Gallagher testified, and this court finds, that Edward R. Gallagher, Sr. informed her that he intended to leave 100% of the pension benefit plan to her upon his death. This intent would have been fulfilled by the McKay/Hochman plan, but not by the 1978 pension benefit plan as drafted by Park West in-house. Sixth, and finally, the actions of the bank itself confirm that Edward R. Gallagher, Sr. (and indeed all the bank's clients) were supposed to be covered by the McKay/Hochman plan. The bank itself distributed 100% of the proceeds of the Gallagher trust to Carol Gallagher and justified this act by reference to the McKay/Hochman plan. When the lawsuit brought by Edward Gallagher's children revealed that the bank had negligently failed to obtain an adoption agreement from Edward R. Gallagher, Sr. transferring his pension benefits plan from the 1978 in-house documents to the McKay/Hochman documents, the bank contacted numerous other clients and hastily updated their paperwork.

The bank's failure to obtain the proper documentation frustrated Gallagher's intention with regard to the trust. As the court has found, Edward R. Gallagher, Sr. *intended* to leave 100% of his pension benefits to Carol Gallagher. Because of the bank's oversight, Carol Gallagher not only found her entitlement to these funds at risk, but she also found herself the target of a lawsuit from the very bank whose negligence had thwarted her husband's wishes.

Carol Gallagher's position was compromised further by the fact that she took several actions that rendered her financially more vulnerable following the bank's distribution to her of 100% of the trust proceeds. The distribution was made to her in 1991. The plaintiffs did not commence their lawsuit against Park West until 1993, and the third-party action was not filed until 1994. By that time, Carol Gallagher had spent a considerable portion of the monies distributed to her to pay off debts and reduce her mortgage. These actions were taken on the reasonable assumption that she was entitled to the monies the bank had given her.

When it came time for this court, in response to the plaintiffs' Motion for Summary Judgment, to assess the respective rights of the parties, the pension documentation developed by McKay/Hochman was completely irrelevant, since it had never been properly adopted by Gallagher. With the legal analysis confined to the 1978 documents and their relation to ERISA and its amendments, this court was constrained to find that the plaintiffs, Carol Gallagher's stepchildren, were entitled to one-fourth of the pension benefit

funds, a result which was probably never intended by Edward R. Gallagher, Sr.

 Under these circumstances, Park West is not entitled to take back what it gave Carol Gallagher. As a general matter, if a trustee makes a payment out of trust property to a beneficiary to which the beneficiary was not entitled, the beneficiary is ordinarily liable for the amount of such overpayment. Restatement (Second) of Trusts § 254; *cf. Kwatcher v. Massachusetts Service Employees Pension Fund*, 879 F.2d 957, 968 (1st Cir.1989) (recognizing action for equitable restitution in ERISA case). However, the trustee may not be entitled to recoupment if the beneficiary "has so changed his position that it is inequitable to compel him to make repayment." Restatement (Second) of Trusts § 254. The circumstances relevant in determining whether it is inequitable to allow the trustee to be indemnified include the nature of the mistake made by the trustee, i.e., whether the trustee was negligent. *Id.* cmt. a, illus.2d.

Carol Gallagher substantially changed her position following the distribution of the pension benefits and there was a lengthy delay before she was aware of any claim against her. It would be inequitable to order recoupment of funds in this circumstance, where Carol Gallagher has placed herself in a more vulnerable position by relying on defendant's competence and good faith.

Furthermore, this is not a case solely of a bank misreading the terms of a plan, then committing a bookkeeping or clerical error that resulted in a windfall to an undeserving party. Rather, Park West's error here is of a much more fundamental nature. The bank violated its fiduciary duty both to Edward R. Gallagher, Sr., and to the potential beneficiaries of the pension fund, by failing to see to it that Gallagher's intent was carried out properly. Put simply, the bank failed to obtain written confirmation of Gallagher's adoption of the McKay/Hochman plan. This failure of the bank to obtain properly executed paperwork had as a consequence the substantial frustration of Edward R. Gallagher, Sr.'s intent. What occurred was not merely an error related to distribution, but gross negligence in the proper performance of the bank's basic fiduciary duties.

For the foregoing reasons, the court will enter judgment for the third-party defendant Carol Gallagher on Park West's third-party complaint.

## B. *Carol Gallagher's ERISA Counterclaim*

As noted above, the court's actions to this point leave only Carol Gallagher's counterclaim under ERISA, and specifically her claim of entitlement to attorneys' fees, to be addressed.

 In view of the finding that the defendant Park West was negligent and violated its fiduciary duties by failing to insure that the necessary paperwork was executed to memorialize the adoption of the McKay/Hochman pension benefit plan by Edward R. Gallagher, Sr., only two questions remain with regard to liability under ERISA: first, is this sort of violation of fiduciary duty actionable under the statute? Second, is Carol Gallagher within the category of persons entitled to seek ERISA's protection? With regard to the first question, counsel for Park West argues that no actionable negligence occurred under ERISA because its conduct related, at most, only to the "modification" of a plan. As the Supreme Court has noted:

> [e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans. When employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust.

*Lockheed Corp. v. Spink*, 517 U.S. 882, 889, 116 S.Ct. 1783, 1789, 135 L.Ed.2d 153 (1996) (citations and internal quotes omitted). In other words, plan sponsors retain the discretion to create, within broad limitations, whatever pension benefit plan they prefer, and to modify or terminate a pension plan completely. ERISA liability attaches only to management or administration of a plan. *Milwaukee Area Joint Apprenticeship Training Committee v. Howell*, 67 F.3d 1333, 1338 (7th Cir.1995).

Defendant is correct as a matter of law, but the cited legal principle does not apply to these facts. The failure of Park West to circulate the necessary paperwork to memorialize the adoption of a plan it had created was an act of mismanagement, not a decision with regard to plan formation or amendment. The line of cases recognizing the freedom of persons or corporations to adopt or modify pension benefit plans in various forms thus fails to assist the defendant here. Park West's violation of fiduciary duty is therefore actionable under ERISA.

To address the second question, the court concludes that Carol Gallagher *is* a proper party to assert this claim. The ERISA statute itself gives authority to "a participant, beneficiary, or fiduciary" to bring an action under the statute and obtain reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(1).

To summarize, the court finds that what occurred constituted an ERISA violation and that Carol Gallagher—a beneficiary of the Plan—is entitled to seek redress for the violation and apply for an award of fees.

The five factors to be analyzed by a court in determining an award of fees under ERISA are set forth in *Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251 (1st Cir. 1986). These factors are: (1) the degree of bad faith or culpability of the losing party; (2) the ability of this party to pay the fees; (3) the deterrent effect of a fee award; (4) the amount of benefit the action confers on members of the pension plan, and (5) the relative merits of the parties' positions. *Id.* at 257–58.

In this case, virtually all these factors favor Carol Gallagher. First, the gross negligence and violation of fiduciary duty exhibited by Park West in this case underlines its culpability. Second, obviously, the bank is in a position to satisfy the fee award and, in the court's view, the award of fees will have the salutary effect of deterring similar incompetence on the part of other banks. With regard to the relative merits of the parties' positions, the counter-claimant clearly prevails. Carol Gallagher is entitled to the full payment her husband intended,

and she should not be saddled with attorneys' fees to obtain it.

For the foregoing reasons, this court will award attorneys' fees for Carol Gallagher in the full amount requested by counsel, $14,816 .25.

### III. CONCLUSION

For the reasons set forth in this Memorandum and in the court's prior memoranda, and for the reasons set forth orally in open court on February 11, 1998, the court will enter judgment as follows.

First, judgment will enter for plaintiffs against defendant Park West in the amount of $42,537.00 with interest to be calculated at 12% from November 30, 1991 and attorneys' fees in the amount of $22,342.50.

Second, with regard to the third-party complaint of the defendant Park West, judgment will enter for the third-party defendant Carol A. Gallagher.

Third, with regard to the counterclaim of the third-party defendant, Carol A. Gallagher, against Park West, judgment will enter in her favor and the court will award attorneys' fees in the amount of $14,816.25